GEORGE SELDEN ET AL., APPELLANTS, VS. CITY OF JACKSONVILLE, APPELLEE.

1. The guaranty of a Constitution, that private property shall not be "taken" or "appropriated" without compensation, does not extend to mere consequential damages resulting to property abutting on a street from a change of grade of the street, or other improvement thereof not constituting a diversion of the street from street purposes, by municipal authorities acting within the scope of their charter powers, but only to a tresspass upon or physical invasion of the abutting property .

2. The provisions of the Constitution of 1885: that private property shall not be "taken" without just compensation (section 12, Declaration of Rights); that the Legislature may provide for the drainage of the land of one person over or through that of another upon just compensation therefor to the owner of the land over which such drainage is had; and that no private property nor right of way shall be "appropriated" to the use of any corporation or individual until full compensation shall first be made to the owner, or first secured to him by deposit of money, such compensation to be irrespective of any benefit from any improvement proposed by such corporation or individual (sections 28, 29, Art. XVI) do not of themselves render a municipality liable for mere consequential damages resulting

to property abutting on a street from the lawful change of grade or other authorized improvement of the street by the municipality.

3. Upon the voluntary dedication of land to the purposes of a street, it becomes, to the extent that it is necessary to be used for a street, the property of the people of the State; and the dedication carries with it the continuing power to change its grade or otherwise improve it in so far as such improvements are for street purposes. This power may be delegated by the Legislature to a municipality as one of its governmental agencies, and to the exercise of these powers the fee of the owners of abutting lots, in the street to its centre is at all times subject.

4. There are incident to the ownership of property abutting on a street certain property rights which the public generally do not possess, *viz :* The right of egress and ingress from and to the lot by the way of the street, and of light and air which the street affords. These incidental rights are under a constitutional prohibition, simply against the " taking " or " appropriation " of private property, subordinate to the right of the State, or to any duly authorized governmental agency acting for it, to alter a grade or otherwise improve a street for street purposes. The original and all subsequent purchasers of abutting lots take with the implied understanding that the public shall have the right to improve or alter the street so far as may be necessary for its use as a street, and that they can sustain no claim for damages resulting to their lots or property from the improvement or destruction of such incidental rights as a mere consequence from the lawful use or improvement of the street as a highway.

5. The erection by a municipal government within the limits of a street and for street purposes and under street conditions justifying it, of a viaduct for the purpose of changing the grade of the street, and in the exercise of its power to change such

grades, is not a "taking" or "appropriation" of private prop-
erty, within the constitutional guaranty against such taking or
appropriation, even though the abbutting owners' rights of in-
gress, egress, light and air are destroyed thereby; nor is this re-
sult of law changed by the mere fact that other corporate
bodies than the municipality have contributed to the expense
of the erection of the viaduct. Whether, however, it would
not be a diversion of the street from of the street purposes,
and a "taking" and "appropriation" for which compensation
must be made, if the necessity for the viaduct was created by
railroad tracks crossing the street, not presented.

Appeal from the Circuit Court for Duval
county.

The facts of the case are stated in the opinion of the
court.

*A. W. Cockrell & Son* for Appellants.

"Legislative authorization exempts from liability
to suits, civil or criminal, at the instance of the State ;
but it does not affect claims of private citizens for dam-
ages for special inconvenience and discomfort, not ex-
perienced by the public at large." Baltimore and Po-
tomac R. R. Co. vs. Fifth Baptist Church, 108 U. S.,
317 ; New York Elevated R. R. Co. vs. Fifth National
Bank, 135 U. S., 432 ; The Morriss and Essex Rail-
road Company vs. The Mayor and Common Council
of the City of Newark, 10 N. J. Eq. (2 Stockton), 352 ;
Port Huron & S. W. Ry. Co. vs. Voorheis, 50 Mich.,
506 ; s. c. 15 N. W. Rep., 882.

" The right of an owner of land abutting on a public street is property in such a sense as to entitle him to compensation, in case the street is appropriated to a use which deprives it of its character as a public way." Elliott on Roads and Street, p. 156 ; Chicago, K. & N. Ry. Co. vs. Hazels, 42 N. W. Rep., 93 ; s. c. 26 Neb., 364 ; Central Branch U. P. R. Co. vs. Andrews *et al.*, 31 Pac., 276 ; s. c. 41 Kan., 370 ; 38 Mich., 71 ; Stone vs. Fairbury, 68 Ill., 394 ; s. c. 18 American Reports, 556 ; Imlay vs. Union Branch Railroad Company, 26 Conn., 249 ; s. c. 68 Am. Dec., 392 ; Jesse W. Starr vs. The Camden and Atlantic Railroad Company, 24 N. J. Law (4 Zabriskie), 592.

" While the diversion of an existing way to a new use does not always give the owner of the soil a right to compensation ; yet, if the burden is materially increased, or the change in the use is such as to depreciate the value of the owner's adjoining land, and the depreciation is the direct and natural result of the change, there is a taking of the property within the meaning of the Constitution." Elliott's Roads and Streets, 159, and cases cited in note 1.

" The courts of many of the States, after some hesitation, have also recognized an additional right in the adjoining owner, distinct from his right as a member of the general public, namely, the right of access to his abutting premises, or as it is called in New York the 'easement of access.' This is so far regarded as

'private property' that not even the Legislature can take it away and deprive the owner of it without compensation." Elliott's Roads and Streets, page 526, and notes 3, 4, and cases cited.

Chief-Justice Robertson, of the Court of Appeals of Kentucky, in pronouncing the opinion of the court in Transylvania University vs. The City of Lexington, 3 B. Mon., 25, thus formulates the proposition of law upon which our Constitution is based.

"Every owner of ground on any street in Lexington has a right as inviolable as it is indisputable to the common unobstructed use of the contiguous highway, so far as it may be necessary for affording him certain individual easements and services, and a convenient outlet to other streets. And of this right the Legislature cannot deprive him without his consent, or a just compensation in money. The extent of this appurtenant right may not in a particular case be easily definable with mathematical precision ; as far as it exists, however, it partakes of the character of private property, and is therefore protected by the fundamental law. But it cannot, as to each proprietor, be co-extensive with all the streets and alleys of the city. As a private right, it must like that of vicinage, be limited by its own nature and ends ; that is chiefly by the necessity of convenient access to, and out-let from, the ground of each proprietor. Beyond such general limit, as to each proprietor of ground in the city, the streets

JUNE TERM, 1891.     563

George Selden et al. v. City of Jacksonville.—Argument of Counsel.

are altogether public highways, and subject like other public roads to alienation or even occlusion, by the sovereign will for the Common Weal."

The appellee contends that there must be a physical invasion of tangible property, before it is taken in the constitutional sense guaranteeing compensation ; and that this is true, both as to the old Constitution as it stood before the Constitution of 1885, and as amended by the Constitution of 1885.

" We think," says Elliott on Roads and Streets, page 192, "It may now be safely affirmed that the law is, that compensation is not restricted to the value of the property actually seized but that for the loss of incidents connected with the property taken, the owner must be reimbursed. This is just, for the incident is part of the property and is often an essential element of value. Where the incident is impaired or destroyed, property is taken within the meaning of the Constitution." This view is affirmed October 7th, 1890, in Abenroth vs. N. Y. El. R. R. Co., 25 N. E. Reb., 496, even where the public holds the fee of the streets, in the following language : "The owners of an abutting lot, though he has no interest in the fee of the street, has nevertheless easement of light, air and access, in the street itself, which are private property within the protection of the Constitution of New York, Art. 1, Sec. 6, and if they are impaired by the erection of an elevated railroad, he may maintain an action for dam-

ages, notwithstanding the legislative sanctions of such use of the street."

The rationale of this decision, the philosophy upon which it proceeds, is that the right of an abutting owner to the "easement," "the right of way," "access to and egress from his premises," to and in the street is "private property" protected by the guarantees of the Constitution from invasion, without just compensation. Its "impairment" is shielded from invasion whether projected under *legislative* or *municipal* sanctions.

The shield which the appellants interpose to the threatened assault upon their rights is the broad shield of the Constitution, the easement which is sought to be destroyed is "private property." The Constitution which protects this private property, does not regard as material the manner or the instruments by which its destruction is to be compassed. That Constitution ordains it shall *not* be destroyed or even impaired without just compensation.

In New York, under a Constitution which provides merely, "nor shall private property be taken for public use without just compensation," the Court of Appeals of New York, repudiating that close and literal construction of constitutional guarantees, which would impair their efficiency, and insisting that constitutional provisions for the security of person and property should be liberally construed, has declared that such an easement as is stricken down in the case at bar is

" private property " under the protection of the provision quoted, *even where* the abutter does not own, as do the appellants in the case at bar, the fee in the streets; and, *further*, that this species of property thus within *this* protection is safe from assault whether conducted under *legislative* or *municipal* sanction; and *equally* protected from both legislative and municipal invasion, though the fee of the abutter does not extend to the center of the street but is confined to the exterior limits of his lot, bound by the streets; and even though the *municipality* owns in fee the soil underlying the street.

And the Supreme Court of Florida is moved in this case not only to repudiate this view of New York and other courts cited, but *further* to declare that the *additional* guarantees, protecting this species of property, placed by the solicitude of the convention into the Constitution of 1885, found in the following section:

" Sec. 29. No private property nor rights of way shall be appropriated to the use of any corporation or individual until full compensation shall first be made to the owner, or first secured to him by deposit of money, which compensation irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of twelve men in a court of competent jurisdiction as shall be prescribed by law," are not sufficient to secure

to the abutting owner, who owns the fee to the centre
of the street, immunity from the absolute destruction
of this "property" by a municipal ordinance, pro-
vided that destruction is accomplished by shutting up
the street and building a viaduct over it.

*W. B. Young* and *J. M. Barrs* for Appelle.

RANEY, C. J. :

The last clause in the twelfth section of the Declara-
tion of Rights of our Constitution is : "Nor shall
private property be taken without just compensation."
This is not, however, the only provision of that instru-
ment relating to the exercise of the right of eminent
domain. There are two sections in the "Miscellaneous
Provisions," or 16th Article, which read as follows :

Sec. 28. The Legislature may provide for the drain-
age of the land of one person over or through that of
another upon just compensation therefor to the owner
of the land over which such drainage is had.

Sec. 29. Nor private property nor right of way shall
be appropriated to the use of any corporation or indi-
vidual until full compensation shall be first made to
the owner or first secured to him by deposit of money;
which compesation, irrespective of any benefit from
any improvement proposed by such corporation or in-
dividual, shall be ascertained by a jury of twelve

men in a court of competent jurisdiction, as shall be provided by law.

It cannot be denied that the almost uniform course of decision has been that a municipal government was not liable for any consequential damages resulting to dwelling lots from an authorized or lawful change of grade of the street by the municipal authorities, where the constitutional provision obtaining has been like that of our Declaration of Rights : "Nor shall private property be taken without just compensation." Such seems to have been this court's understanding of the law twenty years ago, as is shown by Dorman vs. City of Jacksonville, 13 Fla., 538.

The meaning given by the courts and commentators to the words "taken" or "appropriated," as used in such a provision, is that there must be a trespass upon or a physical invasion of the abutting property to bring municipal authorities within the constitutional prohibition so long as such authorities keep within the scope of their powers in using or improving the street. If they do no illegal act as by creating a nuisance, or do not appropriate the street to other than street purposes, or do not invade, or do physical injury to, the abutting property, there is, in the absence of negligence, or of the want of due skill and care in making improvements, (which negligence or want of care or skill may of itself be a ground of corporate responsibility for damages,) no liability to the owners of such property

for any damage resulting from a change of grade or other improvement in the street made by the municipal powers for the convenience or benefit of the public in using the highway as such.   The voluntary dedication of the street as a highway creates certain rights in the public; the land so dedicated becomes to the extent that it is necessary to be used for a street, the property of the people of the State, and the dedication of it to such purpose carries in this country, as well as in England, the continuing power to change its grade or otherwise improve it, in so far as such improvements are for street purposes.   This power may be delegated by the Legislature to a municipality as one of its governmental agencies, and to the exercise of these powers the fee of the abutting owner in the street to its centre is at all times subject, in the manner or to the extent indicated above, under a constitutional provision like that in our Bill of Rights.

In some cases holding these views there has been an omission at least, to notice any distinction between the rights of an abutting owner as such, and the public generally in or as to the streets, but there can be no doubt that there is a substantial and clearly defined difference.   There is incident to abutting property, or its ownership, even where the abutter's fee or title does not extend to the middle of the street, but only to its boundary, certain property rights which the public generally do not possess.   They are the right of egress and ingress from and to the lot by the way of

the street, and the right of light and air which the street affords. Viewing property to be not the mere corporal subject of ownership, but as being all the rights legally incidental to the ownership of such subject, which rights are generally said to be those of user, exclusion and disposition, or the right to use, possess and dispose of; Lewis on Eminent Domain, secs. 54, 55; Dillon on Municipal Corporations, sec. 587 b; Cooley's Constitutional Limitations, 675-6; we are satisfied that the rights just mentioned are within the meaning of the word "property," as it is used in this constitutional provision. These incidental rights of property are under a constitutional guaranty simply against the "taking" or "appropriation" of property, subordinate to the right of the State, or any duly authorized governmental agency acting for it, to alter the grade or otherwise improve the streets *for street purposes.* An original purchaser of an abutting lot, and all subsequent purchasers, take with the implied understanding, or as tacitly agreeing, that the public shall have the right to thus improve or alter the street so far as may be necessary for its use as a street, and that they can sustain no claim for damages resulting to their lots or property from the impairment or destruction of such incidental rights, as a mere consequence from the use or improvement of the streets as highways. Ohio and Kentucky alone, of all the courts of this country, have denied such subordination of these incidental rights to the highway rights of the

public. The doctrine of the courts of the other States and of the United States is that so long as there is no application of the street to purposes other than those of a highway, or no diversion of it from street purposes, any changes of grade made lawfully and in the exercise of good faith, or not maliciously, or for the purpose of doing injury to the abutter, is not within the constitutional inhibition against taking property without compensation, nor the basis for an action for damages. Lewis on Eminent Domain, section 96, and authorities cited in note; Dorman vs. Jacksonville, *supra*.

The Ohio doctrine as summarized by Lewis in his work on Eminent Domain, sec. 98, pp. 121, 122, gives a right of recovery not only under the circumstances indicated above, but also where one builds to an established grade and it is changed to his damage; or where one builds before a grade is established, but succeeds in anticipating the grade which is afterwards established, and the grade after being so established is changed; or where one builds before a grade is established, and afterwards an unreasonable grade is established. The right of recovery is based in the later cases there upon the guaranty that private property shall not be taken for public use without just compensation, (Lewis on Em. Dom., p. 122,) and the property taken is spoken of in these cases as the right of access. In the earlier cases,

however, the ground of the decision was that of natural right and justice. Judge Dillon, in a note to his work on Municipal Corporations, sec. 990, p. 1226, says of the doctrine obtaining in this State, that the common law measure of the liability of municipal corporations has been designedly and deliberately carried beyond the limits established by the current of decision elsewhere.

In Kentucky, in the case of Louisville & L. R. Mill Co., 3 Bush., 416, the grade of the street was to be raised twelve feet above the mill company's lot at the only point of ingress and egress, the improvement entirely clossing the passway, and in the N. & C. Bridge Co. vs. Forte, 9 Bush., 264, there was sufficient space left between the appellee's lot and the bridge for two wagons to pass abreast, and in the former the abutting owner was held entitled to relief on the ground that there was a taking of his private property, an interference with his private right of air, light and passway, while in the latter, relief was denied, as there was no interference with the private rights of the appellee, the lessening in value of his lots from the lawful construction of the bridge and the avenues leading to it being regarded as mere consequential damages, not constituting a cause of action. See also Kemper vs. Louisville, 14 Bush., 87; Lewis on Eminent Domain, sec. 99; 2 Dillon on Municipal Corporations, note to sec. 990, p. 1226. Both Judge Dillon and Mr. Lewis treat the

Kentucky doctrine as virtually making the extent of the injury, and not the fact of injury, the basis of municipal liability.

The provision of the Kentucky Constitution is: "Nor shall any man's property be taken or applied to public use without the consent of his representatives and without just compensation being previously made to him."

In Ohio there are two sections on the subject in the Constitution of 1851. They are the 19th section of the Bill of Rights, and the 5th section of the 13th, or "Corporations," article, and they read as follows:

"Private property shall ever be held inviolate but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads which shall be open to the public without charge, a compensation shall be made to the owner in money, and in all other cases where private property shall be taken for public use a compensation therefor shall be first made in money or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." (Sec. 19, Art. 1, "Bill of Rights.")

"No right of way shall be appropriated to the use of any corporation, until full compensation shall be first made in money, or first secured by a deposit of

money, to the owner, irrespective of any benefit from any improvement proposed by such corporation; which compensation shall be ascertained by a jury of twelve men, in a court of record as shall be prescribed by law." (Sec. 5, Art. XIII, "Corporation.")

The courts of Ohio do not attempt to sustain their peculiar doctrine upon the theory that there is anything exceptional in the Constitution of that State. They hold, as indicated above, that there is a "taking" of property. As much as the decisions of Ohio have been discussed by other courts and by commentators, there can be found neither in those discussions nor in the decisions themselves, any suggestion that the Ohio doctrine is referable to anything peculiar in the Constitution of that State. The same is true of the Kentucky decisions.

It is not to be denied that much hardship has resulted to individuals in their property rights from time to time from the established doctrine ; nor have the courts failed to appreciate these hardships. In O'Connor vs. Pittsburg, 18 Penn. St., 187, a case in which the city authorities reduced the previously established grade, with reference to which the church of the plaintiff had been constructed, and cut down the street seventeen feet in front of the church. Chief-Justice Gibson delivering the opinion of the court said: " We have had this cause reargued in order to discover if possible some way to relieve the plaintiff consistently with law ; but I grieve to say we have discovered

none." Still this doctrine has been so firmly established as law, based upon the principle of the rights of the State in highways and the immunity of itself, and of governmental agencies acting for it and for the benefit of the people, that, notwithstanding the departure of the Ohio courts, they have found themselves unable to ignore or change it, though suggestions have at times fallen from them as to the advisability of the law-making power doing so. These suggestions, and doubtless a growing sense of the harsh consequences of the doctrine, have led to not only legislative action, but also to changes in the organic law of many States, as shown by the Constitutions of Pennsylvania of 1873, and that of Alabama of 1875, by which it is provided that municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for the property *taken, injured* or destroyed * * *; and that of Arkansas of 1874, providing that private property shall not be "taken, appropriated or *damaged;*" and those of Illinois of 1870, West Virginia of 1872, Missouri of 1875, Colorado and Texas of 1876, Georgia of 1877, and California of 1879, that it shall not be "taken or damaged." The purpose and the effect of this introduction of the words "injured," "destroyed," or "damaged" was to give compensation for damages often resulting to private property where there was not a "taking" of the property. There being no taking of private property and consequently no infraction of the constitutional guaranty against

taking without making just compensation, there were yet, as just intimated, many cases in which damages resulted to property owners, although the works or improvements were constitutionally authorized by the law-making power of a State, and carefully and skillfully executed by governmental agencies. Such damage, not being occasioned by any illegal or wrong act, has found expression in the phrase: *damnum absque injuria.* It has also become the custom to speak of such damages as consequential damages, meaning that they are simply the consequence of a legal act, and therefore are not a basis of recovery in the courts, nor of a lawful claim for compensation. It seems not to have been the purpose of these amendments to give a right of recovery for all damaging consequences, resulting from the improvement, to the owner of the property affected, but only for such as affect physically some right of property incident to the abutting property.

This is illustrated by the cases of Edmundson vs. Pittsburg, M. & Y. R. Co., 111 Penn. St., 316; Penn. R. R. Co. vs. Lippincott, 116 *Ibid*, 472; Chester Co. vs. Brower, 117 *Ibid*, 647; Penn. R. R. Co. v. Marchant, 119 *Ibid*, 541; Penn. St. V. R. Co. vs. Walsh, 124 *Ibid*, 544, cited by appellant's counsel, and which are decisions under the new provision of the Constitution of Pennsylvania, referred to above. This provision, so far as it need be given now, is as follows: "Municipal and other corporations and individuals invested with the privilege of taking private

property for public use shall make just compensation for property taken, injured, or destroyed, by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction.'' The first case was an action for damages done to plaintiff's buildings and land by negligent blasting and the reckless and careless construction of the road by the contractors. The company had been given the right to enter and construct and did not enter or construct under the right of eminent domain. It was held, upon the facts of the case, that the company was not liable for the negligence of its contractor, who was exercising an independent employment, and to whom the maxim *respondeat superior* applied; and that a railroad company to which one grants the right to enter upon his land and construct a road is not liable for damages resulting as a consequence of the company's entering and constructing; and that the above provision of the Constitution did not apply to damages resulting from carelessness or negligence in constructing a railroad. "The words 'injured or destroyed,' as found in this section, as every one knows," says the opinion, "were not designed to change, alter or limit the nature and effect of corporate contracts, but to impose on those having the right of eminent domain a liability for consequential damages from which they had been previously exempt.

\*   \*   \*   To create a liability for injuries of this kind, and to make corporations responsible for such damages, was the object, and only object of the section under discussion.'' In the second of the above cases, Penn. R. R. Co. vs. Lippincott, a railroad company erected *on its own land* a viaduct, and operated a railroad thereon, and it was held that there could be no recovery for damages resulting to plaintiff's property, lying on the opposite side of the street, from noise, smoke and dust, the necessary consequence of a due operation of the railroad, no portion of his property having been taken or used in the construction of the viaduct; and that except on proof of negligence the lawful use by a railroad company of a lawful erection entirely upon its own property was not the subject of damages under the above section of the constitution. It was said by the court, that none of the plaintiff's property had been taken, nor any of his rights infringed, so that neither by the Constitution, nor by the case quoted, was there warrant for his contention; that over and beyond the damage which arises from the taking of the property, whether in the shape of land or a right; the Constitution imposed on corporations a direct responsibility for every injury for which a natural person would be liable at common law, and that this was held in the preceding case, but that beyond this they could not go. The third of the above cases, Chester Co. vs. Brower, is one in which the county

37

erected a bridge with stone abutments and piers on a
street and over a creek in a borough. The approach
or abutment of the bridge was of solid masonry and ex-
tended in front of Brower's lot and house. It is stated
that the street could no longer be used except for
travel on foot, the travel now passing over the ap-
proach and upon the bridge. The conclusion reached
was that the county was liable in an action on the case
for the consequential damages to the property, and
this, though the Legislarture had not provided a rem-
edy to enforce the right given by the provision of the
Constitution. "There was," observes the opinion,
"no taking of the property of the plaintiff by the
county for the purpose of constructing the bridge. *
* * The claim was for consequential damages caused
by the erection of the abutments of the bridge some
fourteen feet above the grade of the street in front of
the plaintiff's house. It follows that under the law as
it stood at and prior to the adoption of the Constitu-
tion he would have been without remedy. Struthers
vs. Dunkirk R. Co., 87 Penn. St., 282, and cases there
cited. The Constitution of 1874 made a radical change
in the law as regards consequential damages." In the
fourth case, Pennsylvania R. Co. vs. Marchant, in
which the facts were quite similar to those in the
second case, the decision was that the mischief which
the Constitutional Convention had before it in adopt-
ing the above section was the want of a remedy under

previous Constitutions to obtain compensation when property was *injured* or *destroyed* in the construction or enlargement of corporate works, though no portion of it was actually *taken* by the corporation; and that the remedy provided thereby to secure just compensation by corporations for property "injured or destroyed," has relation to injuries which though properly termed consequential, are yet to be understood as confined to such injuries to one's property as are actual, positive and visible, and are the natural and necessary results of the original construction or enlargement of its works by a corporation, and of such certain character that compensation therefor may be ascertained at the time the works are being constructed or enlarged, and paid or secured, as provided in the Constitution, in advance. That a railroad corporation which has constructed its railroad on its own property in a city without taking any portion of another's property, is not liable for those indirect injuries which are the result merely of the operation of its road in a lawful manner and without negligence, unskillness or malice. That the provision was not intended to impose on corporations a liability in the operation of their works which has never been imposed on individuals. The remaining case, Penn. S. V. R. Co. vs. Walsh, decides that where a railroad is laid down upon a public street and, though at grade, is so constructed with reference to the property of an abutting owner, that by its operation in a lawful manner access to the prop-

erty, if not cut off, is rendered dangerous, the company is liable for consequential damages under the Constitution. The distinction between thise case and those of Lippincott and Marchant is that in the latter there was no injury by reason of the construction of the road, whereas here it was the direct result of the construction, the track being laid close to the curbstone on the side of the street next to plaintiff's property, with the effect indicated. See also Penn. S. V. R. Co. vs. Zeimer, 124 Penn., 560. The cases cited from Alabama. City Council of Montgomery vs. Maddox, 89 Ala., 181, holds, under a constitutional provision similar to that of Pennsylvania, omitting the words, "or secured," that the liability of a municipal corporation extend to all cases of injury caused by grading or cutting down streets or sidewalks without regard to the original dedication or condemnation or to damages paid on former occasions; the measure of damages in every case being the difference in the market value of the property before and after grading.

There is in these Pennsylvania and Alabama decisions nothing, considering the provisions of our Constitution, that aids appellants.

We are unable to find in either or all of the three sections of our Constitution a justification for the theory of appellant's counsel that the use of the term "right of way," in the last of the three sections, was intended as an adoption of the rule allowing indirect or conse-

quential damages. We do not doubt that the abutting owner's right of access, or of ingress and egress from and to the street, and of light and air from the open space above or over the surface of the street, are easements and private property incidental to the ownership of the abutting lot, nor that these easements cannot be "taken" or "appropriated" without just compensation being made for them as such property. This is fully demonstrated by the New York Elevated Railroad cases : Story vs. N. Y. E. R. R. Co., 90 N. Y., 122, decided in 1882; Lahr vs. M. E. R. Co., 104, N. Y., 168, and Abendorth vs. Manhattan R. Co., 122 N. Y., 1, hereafter to be noticed, and by other authorities, as indicated both above and hereafter.

Whatever meaning we give to the expression "right of way," we still find nothing in the Constitution that places it within the protection or inhibition or that instrument unless such right of way is "taken" or "appropriated." These words "taken" and "appropriated," it seems to us, were used in their well-defined sense, and in no other. There is nothing in the pro ceedings of the Constitutional Convention which jus tifies an inference that these words were used in any other sense, or that the framers of that instrument intended to give compensation for damages or injury other than that such as should result from a taking or appropriation, as distinguished from consequential damages.

An examination of these proceedings proves that

the clause of the bill of rights was adopted on the third day of July, and without anything to distinguish its consideration. Journal of the Constitutional Convention of 1885, pp. 229-30.

The first time anything like the 29th section of Article XVI "Miscellaneous Provisions," appears to have been brought to the attention of the Convention was the eleventh day of the same month, and in the seventh section of an article reported by the minority of the Committee on Private Corporations. The majority had recommended two sections to constitute an article to be entitled "Private Corporations," and substantially the same as those finanlly adopted July 21st, and now constituting sections 30 and 31 of Article XVI; they being intended to prevent unjust discrimination and unjust charges by common carriers and others performing service of a public nature, and prohibiting common carriers from granting free passes or discounting fares of members of the Legislature and salaried officers of the State. The seventh section of the article reported by the minority of the committee as an article to be entitled "Private Corporation," uses the words "no property," instead of "no private property nor right of way," and does not use the word "individual." This minority report was indefinitely postponed on the 18th of July, notice of motion for a reconsideration of the vote being given.

On the 21st day of July, the sixteenth article being under consideration, the following were offered as ad-

ditional sections and were referred to the Committee on Miscellaneous Provisions :

"The right of drainage and the means to secure it shall be promoted and protected, and the right of way through inferior lands for the drainage of superior by the direct as well as by the natural course shall be provided for and enforced : *Provided*, That the cost and damage of such easement may be assessed in proportion to benefit upon the lands of the parties applying for the same; and, *provided further*, that the owners of lands bearing the servitude shall be entitled to just compensation from the parties so applying."

"The right to collect rates or compensation for the use of water supplies to any county, city or town, or the inhabitants thereof, is a franchise and cannot be exercised except by authority of and in the manner prescribed by law."

The committee, on the 24th of July, reported these sections back to the convention, recommending the former to the favorable consideration of the convention, but the latter "without recommendation," and on the next day they were referred to the Judiciary Committee. On the 29th of the month this committee reported as a substitute for the same, what is now the 28th section of Article XVI, as it is given above, it having been adopted by the convention on the last day of July.

On the 24th of July, the 16th Article being under consideration, there was offered a section to be entitled "Private Property, how taken for public use," the

first paragraph of it being :  "No private property of persons or corporations shall be taken nor damaged for public use in the construction of railroads, canals, or if taken for other purposes, under chartered rights without just compensation to be paid for the same." This proposed section was also referred to the committee on Miscellaneous Provisions, and on the 28th day of that month it reported as a substitute for the same what is now the twenty-ninth section of the 16th Article, as given at the outset of this opinion, it having been adopted on the last day of July.

These proceedings, if they indicate anything, tend to the conviction that the purpose of the convention was, as shown by its final action, to exclude from the constitution any provison for compensation for damage other than where there was a *taking* or *appropriation* of property. If such was not the intention, the word "damaged" or its equivalent would have been put in the 29th section, such word being in the proposed provision for which it was a substitute.

It is not to be assumed that the judges and lawyers who sat in the convention did not understand what the meaning of the words "taken" or "appropriated" was then, which it is now, or did not know that the abutting owner's right of access and other easements indicated, were private property. The expression "private property," in so far as we can see, certainly includes any right of way which is the subject of private property, and unless the words "right of way" mean a public right of way, we can find in them noth-

ing that adds to the effect which the expression "private property," or the entire section would have without them. We, however, do not mean to intimate that the expression "right of way" includes or applies to a mere public right of way; and, we may remark, that it does not occur to us that the purpose of the section in which these words are to be found was so much to specify what should never be taken without just compensation, as it was to declare the cases in which there shall be no taking without either previous payment, or a security by deposit of money, of the compensation for such taking ascertained in the manner indicated. It is entirely clear that the State acting for itself is not, even if a *municipal* corporation is, within the terms or spirit of this section, in so far as it prescribes anything not implied by the more general provision of the twelfth section of the " Declaration of Rights." We state these views not as committing ourselves finally to the meaning of the words "right of way" in connection with any future case distinguishable from this, nor as precluding the recognition of any now undiscovered legal effect they may have been intended to establish. Giesy vs. C. W. & Z. R. R. Co., 4 Ohio St., 308, 328 *et seq.*

The New York Elevated Railroad cases, mentioned above, and decided under a constitutional provision similar to that in our Declaration of Rights, are relied upon as sustaining the appellant's cause. In the second of these cases, that of Lahr, 104 N. Y., 268, the conclusions of the Story case are stated to be in

effect as follows : 1st. That an elevated railroad in the streets of a city operated by steam and constructed as there described—(about fifteen feet above the surface of the street, supported on columns placed along and partly inside of the outer edge of the sidewalk, and about eleven feet from Story's building, a warehouse, and extending across the whole travelled track of the street, the structure and passing trains to some extent, as found by the trial court, obscuring the light and impairing the usefulness of the premises, and the line of columns abridging the sidewalk and interfering with the street as a thoroughfare)—was a perversion of the use of the street from the purposes from which it was originally designed, and a use which neither the city authorities, nor the Legislature could legalize or sanction without provided compensation for the injury inflicted upon abutting owners. 2nd. That abutters upon a public street, claiming title to their premises by grant from the municipality it covenanting that a street to be laid out in front of the premises, should forever continue for the free and common passage and as public streets and ways for all persons passing or returning through or by the same in like manner as the existing streets in the city are or ought to be, acquire an easement in the bed of the street for ingress and egress to and from their premises, and also for the free and uninterrupted passage and circulation of light and air through and over such street for the benefit of property situated thereon. 3rd. That the ownership of such easement is an interest in the real

estate constituting property within the meaning of that term, as used in the Constitution, and for which compensation must be made before it can be lawfully taken. 4th. That the erection of an elevated railroad, the use of which was intended to be permanent, in a public street, and upon which cars are propelled by steam engines generating gas, steam and smoke and distributing in the air cinders, dust, ashes and other noxious and deleterious substances, and interrupting the free passage of light and air to and from adjoining premises, constitute a taking of the easement and its appropriation by the railroad corporation, rendering it liable to the abutters by the damage occasioned by such taking.

It was further held in Lahr's case that no legal difference exists with reference to the interest acquired by abutting owners in a public street where the title is like that held by Story and where it is one acquired through *mesne* conveyances from the original owner whose property has been taken by proceedings *in invitum* instituted by the municipality under a public statute for acquiring land for street purposes. Such statute providing that the land thus taken shall be held "in trust nevertheless that the same be appropriated and kept open for or as a part of a public street * * forever in like manner as the other public streets * * in said city are and of right ought to be." In Abendorth's case, 122 N. Y., 1, the decision was that though the title of the owner of the abutting lot extends only to the side of the street, and the owner

588                    SUPREME COURT.

George Selden et al. v. City of Jacksonville.—Opinion of Court.

thereof has no interest in the street except as the owner of such abutting lot, he has incorporeal private rights in the street which are incident to his lot and are private property within the meaning of the constitutional provision, forbidding their being taken for publice use without just compensation; and that it is no justification to their impairment that the act complained of is done pursuant to legislative authority.

It is apparent from the above statement of these decisions, and no one giving a careful and fair consideration of the opinions can fail to be so impressed, that the appropriation of the streets to the use of such railroads is held to be a diversion of the streets from highway purposes, to the new and inconsistent purpose of an elevated railroad, and that this diversion is what, in the judgment of the court, constitutes the legal invasion, and unlawful taking or appropriation of the easements incident to the abbutting lot; and it is equally apparent upon the face of the opinions that the doctrine they sustain is not and was not intendsd to conflict with the views announced in the previous portions of this opinion as to the power of a municipality over streets so long as it does not divert the street from the original purposes for which it was established, or seek to apply it to other than street uses. The importance of the principle and interests involved, justify proofs of this assertion by extracts from the opinions. Answering the argument of the railroad company made upon the basis of Transportation Co. vs. Chicago, 99 U. S., 635, where the claim against the city was for

damages for an obstruction to the plaintiff's docks, by the deposit of materials, the construction of a coffer-dam and other work necessary to the building of a tunnel for the extension of a street, it is said in Story's case : " The work was a necessary city improvement, and the interruption and obstruction was temporary— ceasing with the completion of the work. It was held that the plaintiff could not recover, and this upon the principle applied and practiced upon in all our cities, that the municipality whether owners of the fee of the street or vested with an easement only, may repair or improve it 'to adopt it to easy and safe passage.' It permits the leveling of a street by filing up or dig-ging away, and if intersected by a stream the erection of a bridge or tunnel. If in doing either of these things materials are necessarily collected or an exca-vation made to the present and temporary detriment of a lot owner, he cannot complain. His ownership is subject to the exercise of this public right, and he must submit to the inconvenience in order that the street may be preserved. So, in placing a pavement or exca-vating for a sewer, the stone for the one, or the dirt from the other, may for a time inconvenience the lot-owner. To this in like manner he must submit, as to a burden provided for in his grant, or as one of the terms implied by his location upon a public avenue." Again it is observed : " It is no doubt true that the grade of a street or highway may be altered by raising it or lowering it, without liability on the part of the munic-ipality to the abutter, but this is on the ground that

590 SUPREME COURT.

George Selden et al. v. City of Jacksonville.—Opinion of Court.

the public had already paid a full compensation for all damage to be done by them to the adjacent owners by any reasonable or convenient mode of grading the way. But the principle applicable to such a case does not aid the defendant. There is no change in the street surface intended, but the elevation of a structure useless for general street purposes and as foreign thereto as the house in Vesey street (Corning vs. Lowerre, 6 J. C. R., 439), or the freight depot (Barner vs. Keokuk, 94 U. S., 324). And speaking of the surface railway cases, People vs. Keer, 27 N. Y., 188, and Kellinger vs. Forty-second Street Railway, 50 N. Y., 206, it is said "the use of streets permitted was not inconsistent with the purposes of the trust." It is also remarked in the opinion delivered by Judge Tracy, (90 N. Y., 170), that while the Legislature may regulate the uses of the street as a street, it has no power to authorize a structure thereon which is subversive of and repugnant to the uses of a street as an open public street, and that whether a particular structure authorized by the Legislature is consistent or inconsistent with the uses of a street as a street must be largely a question of fact depending upon the nature and character of the structure authorized. In Lahr's case it is observed that an abutting owner necessarily enjoys certain advantages from the open street, which belong to him by reason of the location of his property and are not enjoyed by the general public, such as the easements referred to above, and that they are not only valuable to him for sanitary purposes, but indis-

pensable to the proper and beneficial enjoyment of his property, and are legitimate subjects of estimate by the public authorities in raising a fund necessary to defray the cost of constructing the street ; and that he is compelled to pay for these advantages and rights at their full value, and if in the next instant they may by legislative authority be taken away and diverted to inconsistent uses a system has been inaugurated which resembles more nearly legalized robbery than any other form of acquiring property. And it is also further said that the right which the municipality acquires is limited by the public necessity, and, in the case before the court, could not extend beyond its use for street purposes, and all other uses which might be enjoyed therein consistent with its use as a street must from necessity have remained in and resided with the person from whom it was taken, even after the transfer of the fee to the municipality. Afterwards it is declared that "the logical effect of the decision in the Story case is to so construe the Constitution, as to operate as a restriction upon the legislative power over the public streets opened under the act of 1813, and confine its exercise to such legislation, as shall authorize their use for street purposes alone. Whenever any other use is attempted to be authorized, it exceeds its constitutional authority. Statutes relating to public streets which attempt to authorize their use for additional street uses, are obviously within the power of the Legislature to enact, but questions arising under such legislation are inapplicable to the questions here involved. Such

are the cases in respect to the changes of grade ; the use of a street for a surface horse railroad ; the laying of sewers, gas and water pipes beneath the soil ; the erection of street lamps and hitching posts, and of poles for electric lights used for street lighting. All of these relate to street uses sanctioned as much by their obvious purpose, and long continued usage, and authorized by the appropriation of land for a public street." 104 N. Y., 291-3.

These extracts clearly sustain the assertion in behalf of which they are invoked.

The practical deduction to be made from the preceding discussion is, that if what is sought to be enjoined is only an application of the street to additional street purposes, there is, in the absence of any physical in vasion of the abutting lots, no taking or appropriation of any property or right of way of complainants, within the meaning of the prohibition of the Constitution. Without intimating what effect allegations charging malice, negligence or unskillfulness would have in an equitable suit of this character, it is clear that there are no such allegations in the record.

The theory of the bill is, that the viaduct is being erected by the four railroad companies and the county of Duval and city of Jacksonville, under and in accordance with the agreement there set out, and that the purpose of the agreement was to erect the viaduct over and above the numerous railroad tracks crossing said street, and to put the street railway on the viaduct, and make the surface of the viaduct, instead of the

original surface of the street, the grade for the passage of the public as they should come and go. It would be idle to contend that the complainants are not damaged, at least consequentially, independent of any benefits which may accrue from the improvement. In so far as we can understand the facts, they are to be completely shut in and cut off from any communication with the other portions of Jacksonville and the rest of the world, except by the St. Johns river, unless they shall at their own expense construct some way to reach the surface of the viaduct from their lots or improvements on the same, and there will be also an abridgment of light and air. The appellant's case, however, presented by the record before us, is not that the necessity of constructing the viaduct was produced by the laying of railroad tracks across Commercial street, and that as a result of such railroad construction, that portion of said street was converted by the municipal agency into other than street purposes, and the object of the viaduct was to accomplish this end. We express no opinion on such a case, as it is not presented. If it be that the construction of this viaduct under and pursuant to the agreement is a diversion of the street from its highway purposes, there can be no doubt or question that there has been a taking of complainants' easements without compensation, and in violation of the provision of the bill of rights, and of the 29th section of the 16th article of our organic law ; but under the state of the pleadings, and the manner of the submission of the cause before us, we cannot consider this

38

question, but are confined to a judgment of the case as one in which the municipal government of Jacksonville is erecting the viaduct, not as a joint party with the others to the agreement, and acting under it, to meet a result necessitated by the existence of the railway track, but in the exercise of its chartered powers to change the grade of the street, though under an agreement with the several parties named as co-defendants, by which they are to contribute to the expense of the construction of the viaduct, by which the grade will be so changed. It is not contended that if the conditions exist which will justify the city in the exercise of its powers, as such, to change the grade of the street, that the change cannot be made by means of a viaduct; nor that the street conditions are not such as authorize the city to erect a viaduct for the purpose of changing the grade, if it has power to do so without first compensating complainants for the alleged taking of or damage to their property. The city appearing alone has tendered issue upon the theory that it is doing the work of itself, and under and by virtue solely of its own organic powers to grade streets, with, it is true, pecuniary aid from the parties named as co-defendants, and complainants have accepted the issue and contend that the city has not, under its charter and the Constitution of the State, power to change a grade of a street without first making compensation for damages resulting from an interference with the complainants' easement of access, light and air, al-

though there is no encroachment upon or invasion of complainants' premises.

The charter act, Chapter 3775 of the statutes, approved May 31, 1887, provides, in Sec. 4 of Article III, that the Mayor and City Council shall have power by ordinance to make appropriations to alter, widen, extend, grade or otherwise improve, clean and keep in repair streets, alleys and side-walks; and also enacts that it shall have power, in like manner, to take and appropriate grounds for widening streets or parts thereof, when the public convenience may require it, provided the owner or owners thereof shall receive compensation for the same. The act further provides, Section 8 of Article V, that the Board of Public Works shall have exclusive power and control over the construction, supervision, cleaning, repairing, grading and improving of all streets, and to fix and establish the grades of all streets and alleys, avenues and thoroughfares. These provisions give full power to fix and change the grade of streets, and they do not provide that any compensation shall be made by the city to abutting owners for any taking of or damage to their property, in fixing or changing the grade, and hence none can be required of the city against its will, or in the absence of a binding stipulation, unless there is a diversion of the street from street purposes, or other appropriation of the abutter's property within the meaning of the constitutional provision heretofore mentioned.

The fact that a street railway may be put on a via-

duct which a city lawfully erects, as a means of duly grading a street, will not render the viaduct otherwise or alone a diversion of the street from highway purposes, or be a ground for enjoining the erection of the viaduct for street purposes, even if the erection of the viaduct for the purpose of such a railway would be a diversion of the street, and the subject for an injunction. The construction of a viaduct for street purposes should not be interfered with, although the subsequent erection thereon of a street railway should, when about to be begun, be the subject of an injunction.

If the viaduct is being erected under the agreement among other purposes for that of a street railroad, or if it is being erected under the agreement for the purposes of carrying the street over the railroad tracks, which railroad companies are authorized under certain circumstances to do, but whether independent of or subject to the constitutional provision as to making compensation for taking the easements of abutting owners we do not say, the railroad companies were entitled to be heard. No such case has, however, been made before us. We have discussed and decided the only case presented, and our judgment is, that, the order refusing the injunction was proper, and should be affirmed.

It will be ordered accordingly.