Decided 5 March, 1900; affirmed on rehearing 17 September, 1900.

## BRAND *v*. MULTNOMAH COUNTY.

[50 L. R. A. 389, 60 Pac. 390, 62 Pac. 209.]

POWER OF STATE OVER STREETS AND HIGHWAYS — GRADES.

1. The state has absolute and paramount control over all public highways, including city streets ,within its borders, and may at its pleasure fix or change the grade thereof; and the fact that the state has delegated its paramount control of certain streets to a municipality does not prevent the state from fixing the grade thereof.

COMPENSATION FOR ADDITIONAL SERVITUDE.

2. It is settled law that neither city streets nor the property abutting thereon can be burdened with servitudes other than those legitimately attaching thereto as city streets, without just compensation being made to the property owner.

CHANGE OF STREET GRADE — CONSEQUENTIAL DAMAGES.

3. A municipality does not entail any liability for damages resulting from fixing a street grade unless by some constitutional or statutory provision.

CHANGING STREET GRADE—DAMAGES AS A CONSTITUTIONAL "TAKING."

4. The damage resulting from a change in a street grade is not a "taking" of property, within Const. of Oregon, Art. I, § 18, providing that "private property shall not be taken for public use without compensation."

TOLL BRIDGE — PUBLIC HIGHWAY.

5. When a license to take bridge tolls expires, the free use of the bridge as a public highway becomes vested in the people.

LEGISLATIVE ACT ESTABLISHING STREET GRADE — RIGHT TO DAMAGES.

6. A legislative act granting the right to construct a bridge, the ends of which will be above the streets which it connects, and providing that one of the approaches shall be maintained on and along a given street and shall conform to the grade of a certain cross street, establishes the grade of the street along which the approach is built as a line from the cross street to the end of the bridge structure.

CHANGING STREET GRADE — RIGHT OF ABUTTER TO DAMAGES.

7. An abutting lot owner is not entitled to compensation for the construction of an elevated roadway completely filling the street in front of his lot and destroying access thereto, when such structure constitutes a change in the street grade.

CHANGING A STREET GRADE NOT A CONSTITUTIONAL TAKING.

8. The occupation of a street by an elevated roadway or a bridge approach entirely filling such street and preventing access to abutting lots and the buildings thereon is not a taking of such lots within a constitutional provision that "private property shall not be taken for public use without just compensation," where the structure is authorized as a part of the street, since the use is not different from what it was before.

CURATIVE ACT — STREET GRADE.

9. A statute declaring the surface of a bridge approach to be the established grade of a street upon which it is located,* and which it entirely occupies, cures any irregularities in the original appropriating of the street to such purpose, though such statute was passed after the decision in the trial court of a suit to enjoin the continuance of such approach.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Bill by David Brand against Multnomah County and others to enjoin the continuance of a structure in the street in front of plaintiff's lots.

The facts attending the present controversy are, in brief, as follows: The plaintiff is the owner of lots 2, 3, and 4 in block 72 of the City of Portland, extending on the east to the Willamette River, and having appurtenant thereto the usual riparian rights and privileges. They are bounded on the west and south by Front and Madison streets. The grade of Front Street was established by competent authority long prior to the erection of the bridge in question. That of Madison, from Front to the river, has never been established, except as the authority given for the erection of such bridge and its western approach may have served for the purpose. The Columbia Street Bridge Company, a private corporation, was, by an act of the legislative assembly approved Feb-

---

*NOTE.—The statute here referred to is part of Section 231 of the Portland Charter of 1898, passed after this case had been appealed. It reads as follows: "The approach of Madison Street Bridge on and over Madison Street, as now constructed, is hereby ratified, and the surface of said bridge and approaches, as now constructed, on and along Madison Street and Hawthorne Avenue, are hereby declared to be the established grade of said streets."—REPORTER.

ruary 26, 1885, and amended February 25, 1889, granted the right, privilege, and authority to construct and maintain a bridge across the Willamette River, between the cities of Portland and East Portland, for any and all purposes of travel and commerce. Among other things, it was thereby provided: "Said bridge shall be constructed of iron, or of wood and iron, and shall be conveniently arranged for the safe passage of wagons and other vehicles, and shall have proper sidewalks for pedestrians, and such bridge shall be so constructed, maintained and used from, on, and along Madison Street and [in] the City of Portland to, on, and along Hawthorne Avenue [otherwise designated and formerly known as 'Asylum Street'] in the said City of East Portland. * * * Said bridge shall conform to the grade of Front Street in Portland and Water Street in East Portland." The corporation and its assigns were empowered to take tolls, but the County Court of Multnomah County was authorized to fix and regulate the rates thereof from time to time as occasion seemed to demand. The bridge was constructed in pursuance of the authority thus granted, but at the time of its construction an open roadway, 14½ feet in width, was left in the center of its western approach, leading from the eastern line of Front Street down the incline on Madison Street, giving ingress and egress to plaintiff's buildings situate on his lots on the river bank, which are much lower than the bridge approach.

In November, 1891, the Bridge Committee appointed by authority of an act of the legislative assembly, filed in the office of the Secretary of State February 18, 1891, purchased said bridge pursuant to the provisions of the act, and continued in the management and control thereof until about June 20 following, when the Multnomah county court assumed the management and control, in pursuance of an act of the legislative assembly adopted February 1, 1895, and

38 OR.—6.

has continued in such management and control ever since. In April the Bridge Committee, claiming to act in pursuance of lawful authority, planked over and closed up the said opening, and caused said west approach to be made even and solid. Before closing the opening or roadway the commission petitioned the common council of the City of Portland, praying its consent thereto, which was accorded, with a proviso, however, that the "commission restore the driveway if not satisfactory to property owners." The approach, since the closing up of said opening, has been kept and maintained in that condition to the present time, and the plaintiff has been and is now deprived of the means of ingress and egress with teams and vehicles to and from his said buildings by way of Madison Street. The bridge has, ever since its completion, been used by the general public. The Columbia Street Bridge Company charged and received tolls for the use of the bridge up to the time the Bridge Committee acquired the same, ever since which time it has been free to the general public. The defendant, the East Side Railway Company, has a franchise for operating its street railway upon and over said bridge, and is now maintaining a double track thereon, and directly over the space formerly left open for the roadway. The western approach, extending from Front Street to the main part of the bridge, is 261 feet in length, and is constructed so as to conform to the grade of said street. The plaintiff brings this suit against Multnomah County, the City of Portland, and the said East Side Railway Company, to enjoin each of them from maintaining the said bridge and the western approach thereof in its present condition, and to require them to reopen the said roadway from Front Street to the plaintiff's water-front buildings. The defendants prevailed in the court below, and the plaintiff appeals.                              AFFIRMED.

For appellant there was a brief over the name of *Fenton, Bronaugh & Muir,* with an oral argument by *Mr. William T. Muir.*

No grade has ever been established on Madison Street from the east line of Front Street to the river. This act does not assume to establish a grade; it merely grants a franchise to a private corporation and restricts and regulates the method of exercising the powers granted: *Willamette Iron Works* v. *Oregon Ry. & Nav. Co.*, 26 Or. 228, 229 (29 L. R. A. 88, 37 Pac. 1016, 46 Am. St. Rep. 620) ; *McQuaid* v. *Port. & Vanc. Ry. Co.*, 18 Or. 237 (22 Pac. 899).

The approach, when originally constructed, was and could be used only by those traveling over this toll bridge. The act did not grant the corporation the power of eminent domain. The building of a solid elevated roadway from the west end of the bridge 261 feet to the east line of Front Street, would necessarily destroy the right of ingress to and egress from the plaintiff's property, and render access to the river front impossible.

This closing up of the open space in the bridge approach measurably destroys plaintiff's right of ingress to and egress from a portion of his property abutting on Madison Street and utterly cuts off all access to that portion of it facing the Willamette River. This right of ingress and egress is property, and cannot be destroyed by either the legislature or city council, nor can it be taken without compensation: 2 Dillon, Mun. Corp. (4 ed.), Sections 587*b*, 587*c*, 656*a*, 656*b*, 723*b*, 723*c*; 24 Am. & Eng. Enc. Law (1 ed.), 36, Subd. 4; *Story* v. *New York Elev. R. R. Co.*, 90 N. Y. 122, 177, 179 (43 Am. Rep. 146) ; *Lahr* v. *Met. Elev. Ry. Co.*, 104 N. Y. 268-9 (10 N. E. 528) ; *Kane* v. *New York Elev. R. R. Co.*, 125 N. Y. 164 (11 L. R. A. 640, 26 N. E. 278) ; *Stack* v. *East St. Louis*, 85 Ill. 377 (28 Am. Rep. 619) ; *Pekin* v. *Bereton*, 67 Ill. 475 (16 Am. Rep. 629) ; *Paquet* v. *Mt.*

*Tabor St. Ry. Co.,* 18 Or. 233 (22 Pac. 906) ; *McQuaid* v. *Port. & Vanc. Ry Co.,* 18 Or. 237, 247, 256 (22 Pac. 899) ; *Willamette Iron Works* v. *Or. Ry. & Nav. Co.,* 26 Or. 224, 228, 229, 231 (46 Am. St. Rep. 620, 29 L. R. A. 88, 37 Pac. 1016) ; *Moose* v. *Carson,* 104 N. C. 431 (10 S. E. 689, 7 L. R. A. 548) ; *Crawford* v. *Village of Delaware,* 7 Ohio St. 469, 471 ; *Lackland* v. *North Mo. R. R. Co.,* 31 Mo. 187; *Transylvania University* v. *Lexington,* 3 B. Mon. 25 (38 Am. Dec. 173) ; Elliott, Roads & Streets, p. 526; *Lewis* v. *City of Portland,* 25 Or. 133, 157 (42 Am. St. Rep. 772, 46 Am. & Eng. Corp. Cas. 230, 22 L. R. A. 736, 35 Pac. 256).

Easement of access, of light and of air, which, taken in connection with the soil of a city lot, constitute the property of the owner, are dependent upon the streets immediately contiguous. They are so dependent because their beginning and subsequent continuation are inseparable from the streets, and because they arise and exist out of the relation which the lot, to which they are appurtenant, bears to the adjoining streets. In addition to the right of safe and unobstructed travel, the abutting owner has a special and private right to use the street as a means of access to his property. This easement he may protect, and, in the protection of it, he may insist that no structure shall be placed or maintained in the street which, although it may be beneficial in a sense to the public at large, is detrimental to him as the owner of property affected : *Willamette Iron Works* v. *Oregon Ry. & Nav. Co.,* 26 Or. 224 (29 L. R. A. 88, 46 Am. St. Rep. 620, 37 Pac. 1016) ; *Theobold* v. *Louisville & T. R. R. Co.,* 66 Miss. 279 (4 L. R. A. 735, 6 South. 230, 14 Am. St. Rep. 564) ; *Adams* v. *Chicago B. & N. R. R. Co.,* 38 Minn. 286 (1 L. R. A. 493, 39 N. W. 629, 12 Am. St. Rep. 644) ; *Barnett* v. *Johnson,* 15 N. J. Eq. 481 ; *Moose* v. *Carson,* 104 N. C. 431 (7 L. R. A. 548, 10 S. E. 689, 17 Am. St. Rep. 681) ; *Ross* v. *Thompson,* 78 Ind. 94; *Brakken* v. *Minnesota, etc., R. R. Co.,* 29 Minn. 41 (11 N. W. 124) ; *Transylvania University*

*v. Lexington,* 3 B. Mon. 25 (38 Am. Dec. 173) ; *State* v. *Laverack,* 34 N. J. Law, 201 ; *Lackland* v. *North Mo., etc., R. R. Co.,* 31 Mo. 180.

## ON REHEARING.

We are firm in the conviction that the public has no such right as entitles it, without rendering due compensation, to take away all means of access to a lot abutting on a public street. The legislature may change the grade of a street, or permit its use in some new or proper form, but it cannot, as to the abutting owner, take the street away. We know of no case, with the possible exception of *Seldon* v. *Jacksonville,* 28 Fla. 558 (14 L. R. A. 370, 29 Am. St. Rep. 278, 10 South. 457), which denies the right of compensation when all access has been cut off. The property has been taken when the incidents of a fee simple title have been destroyed, and nothing remains to give value to the land : *Pumpelly* v. *Green Bay, etc., Co.,* 80 U. S. (13 Wall.), 166, 177-8; *Edwards* v. *Allonez Mining Co.,* 38 Mich, 46 (31 Am. Rep. 301) ; *Eaton* v. *Railway Co.,* 51 N. H. 504, 511 (12 Am. Dec. 147) ; *Hooker* v. ——— *Company,* 14 Conn. 146 (36 Am. Dec. 477) ; *Haynes* v. *Thomas,* 7 Ind. 38; *Prattzman* v. *Railway Co.,* 9 Ind. 467 (68 Am. Dec. 650) ; *Crawford* v. *Taylor,* 7 Ohio, 459; *Buchner* v. *Railway Co.,* 56 Wis. 414; *Louisville* v. *Louisville, etc., Co.,* 3 Bush, 416 (96 Am. Dec. 243).

See, also, on the principle involved, the following cases : *Newport, etc.* v. *Foote,* 9 Bush. 264; *Grand Rapids, etc., Co.* v. *Jarvis,* 30 Mich. 308, 321 ; *Western Union Telegraph Co.* v. *Williams,* 86 Va. 696 (19 Am. St. Rep. 908, 8 L. R. A. 429, 11 S. E. 106) ; Lewis, Eminent Domain, Sections 56, 57, 58; *Stevens* v. *Proprietors, etc.,* 12 Mass. 465-8; *Rigney* v. *City of Chicago,* 102 Ill. 64, 74; *Spencer* v. *Metropolitan Ry.,* 120 Mo. 154, 160; *City of St. Louis* v. *Hill,* 116 Mo. 527, 534; *Payne* v. *Kansas City, etc., Ry.,* 112

Mo. 617-20; *McKenzie* v. *Mississippi, etc., Co.,* 29 Minn.
288, 292; *Conniff* v. *San Francisco,* 67 Cal. 45-49; Cooley,
Con. Lim. (5 ed.), p. 674, note 2; *Street Ry. Co.* v. *Cum-
minsville,* 14 Ohio St. 523; *Thompson* v. *Company,* 54 N. H.
545; *City of Chicago* v. *Rumsey,* 87 Ill. 348, 349; *Lostutter*
v. *City,* 126 Ind. 436; *Common Council* v. *Croas,* 7 Ind. 9;
*Terre Haute, etc.,* v. *Bissell,* 108 Ind. 113; *Town of Renese-
laer* v. *Leopold,* 106 Ind. 29; *City of LaFayette* v. *Nagle,*
113 Ind. 425; *Schaefel* v. *Doyle,* 86 Cal. 107; *Hayes* v. *Co.,*
46 Minn. 349; *Lamm* v. *Ry. Co.,* 45 Minn. 71-73-75-79;
*Reining* v. *New York L. & W. Ry. Co.,* 128 N. Y. 157-167
(14 L. R. A. 133, 28 N. E. 640), in which the court says: "It
is enough if such part of the street is practically and substan-
tially closed against them for ordinary street uses": *City of
Buffalo* v. *Pratt,* 131 N. Y. 293-299 (27 Am. St. Rep. 592,
15 L. R. A. 413); *Pearsall* v. *Board,* 74 Mich. 559-561-2
(4 L. R. A. 193).

The following are change-of-grade cases: *Reining* v.
*New York L. & W. Ry. Co.,* 128 N. Y. 157 (14 L. R. A.
133, 28 N. E. 640), affirming 13 N. Y. Supp. 253; *Willam-
ette Iron Works* v. *Or. Ry. & Nav. Co.,* 26 Or. 224 (29 L.
R. A. 88, 46 Am. St. Rep. 640, 37 Pac. 1016); *Foster* v.
*National Bank,* 57 Vt. 128; *Glover* v. *Powell,* 10 N. J. Eq.
211; *Trenton Water Power Co.* v. *Raff,* 36 N. J. Law, 335;
*Kemper* v. *Louisville,* 14 Bush. 87; *Lee* v. *Pembroke Iron
Co.,* 57 Me. 481 (2 Am. Rep. 59).

For respondents there was an oral argument by *Messrs.
Joel M. Long,* City Attorney, and *William A. Cleland,* with
a brief over the names of *J. M. Long, W. A. Cleland, Ralph
R. Duniway* and *Russell E. Sewall,* District Attorney.

The public highways of the city are not its private prop-
erty, nor are they the private property of individuals; and
hence the legislature may transfer their supervision and con-

trol to another governmental agency, if it does not thereby divert them to a use substantially different from that to which they were originally intended: *Simon* v. *Northup, 27* Or. 487 (30 L. R. A. 171, 40 Pac. 560) ; *Portland, etc., Ry.* v. *Portland,* 14 Or. 188 (58 Am. Rep. 299, 12 Pac. 265).

The power of the legislature over public corporations within the state is without limit, unless restrained by express constitutional provisions; hence, the legislature may direct the use of streets of a city to a particular purpose, may put highways under the control of the city or any independent agency, and may afterwards take them away from this agency and direct that they shall be under the control of another: *Winters* v. *George,* 21 Or. 251 (27 Pac. 1041) ; *Simon* v. *Northup,* 27 Or. 487 (30 L. R. A. 171, 40 Pac. 560) ; *Heiple* v. *East Portland,* 13 Or. 97 (8 Pac. 907) ; *Price* v. *Knott,* 8 Or. 439.

The primary object of the act of the legislature in granting the franchise to construct a bridge between two streets, one located in the then City of Portland and one in the City of East Portland, was to secure the public accommodation to the traveling public, although the right to take tolls by the bridge company is *privati juris* and an incident to the franchise. The bridge itself being for the public accommodation and public travel is *publici juris:* *Hackett* v. *Wilson,* 12 Or. 25 (6 Pac. 652) ; *Montgomery* v. *Multnomah Ry. Co.,* 11 Or. 344 (3 Pac. 435) ; *Cook* v. *Port of Portland,* 20 Or. 580 (13 L. R. A. 533, 27 Pac. 263) ; *Winters* v. *George,* 21 Or. 251 (27 Pac. 1041) ; *Price* v. *Knott,* 8 Or. 439.

The City of Portland is not liable for consequential damages by reason of the injury to property caused in the establishment of a grade, or resulting from the legislature authorizing persons to build bridge approaches to conform to certain grades: 2 Dillon, Munic. Corp. § 992 ; *Bush* v. *City of Portland,* 19 Or. 45 (23 Pac. 667) ; *Conklin* v. *New York, etc., Ry. Co.,* 102 N. Y. 107 (6 N. E. 663).

Streets in which public interests have vested cannot be diverted to a permanent private use. The attempt on the part of the plaintiff to secure an opening in the middle of the street in order to secure a convenient passage-way to his property below the grade, rather than construct a passage-way over his own property, is the diversion of a street from a public purpose to a private use: *Chicago Canal Co.* v. *Garrity,* 115 Ill. 161 (3 N. E. 448); *Lee* v. *Mound Station,* 118 Ill. 312 (8 N. E. 759); *Chicago* v. *Crosby,* 111 Ill. 540; *State* v. *Burdetta,* 73 Ind. 185 (38 Am. Rep. 117); Elliott, Roads & Streets, p. 18.

When the legislature authorized the bridge commission to purchase this bridge, it was a ratification of its construction: *Saugatuck Bridge Co.* v. *Town of Westport,* 39 Conn. 337; *City of Chicago* v. *Powers,* 42 Ill. 169 (89 Am. Dec. 418); *The Clinton Bridge,* 77 U. S. (10 Wall.), 454.

A bridge over a stream crossing a city street is a part of the street: *Cascade County* v. *City,* 18 Mont. 537; *City of Chicago* v. *Powers,* 42 Ill. 169 (89 Am. Dec. 418).

When the legislature authorized the bridge to be constructed and maintained and used on Madison Street in the City of Portland, and on Hawthorne Avenue in the City of East Portland, and provided that the bridge should conform to the grade of Front Street in Portland, and Water Street in East Portland, it was an establishment of and fixing of the grade on a straight line for all intermediate points between Madison Street and Hawthorne Avenue: *Pratt* v. *Holmes St. Ry. Co.,* 49 Mo. App. 63; *Gafney* v. *San Francisco,* 72 Cal. 146 (13 Pac. 467); *Conklin* v. *Keokuk,* 73 Iowa, 343 (35 N. W. 444).

Plaintiff's lots abut upon Front Street, which is improved. Now, having unobstructed access to his property by way of that street, the legislature has full power and authority, without providing any compensation to him, to close the other way, or method of access, that is, the one by Mad-

ison Street: *Fearing* v. *Irwin,* 55 N. Y. 486; *Gerhard* v. *Seekonk Bridge Com.,* 15 R. I. 335 (5 Atl. 199); *King County Fire Ins. Co.* v. *Stevens,* 101 N. Y. 418 (5 N. E. 353); *People* v. *Kerr,* 27 N. Y. 188; *Smith* v. *Boston,* 7 Cush. 254; *Castle* v. *Berkshire,* 11 Gray, 26; *Paul* v. *Carver,* 24 Pa. St. 207 (64 Am. Dec. 649); *Keller* v. *Atchison T. & S. F. R. R. Co.,* 28 Kan. 625; *Pollock* v. *San Francisco Orphan Asylum,* 48 Cal. 490; *Sage* v. *Mayor of New York,* 154 N. Y. 61 (38 L. R. A. 606, 47 N. E. 1096, 61 Am. St. Rep. 592); *Caster* v. *Mayor of Albany,* 43 N. Y. 399; *City of Denver* v. *Bayer,* 7 Colo. 117 (2 Pac. 6).

The interest in the use of streets and highways and public places and their uses being *publici juris,* the power of regulating such uses is in the legislature as the representative of the whole people. It is a part of the political or governmental power of the state in no way held in subordination to the municipal corporation: *Moses* v. *Pittsburgh, etc., Ry. Co.,* 21 Ill. 516; *Murphy* v. *Chicago,* 29 Ill. 279 (81 Am. Dec. 307); *Mercer* v. *Pittsburgh, etc., Ry. Co.,* 36 Pa. St. 99; *Springfield* v. *Conn. River R. R. Co.,* 4 Cush. 63; *People* v. *Kerr,* 27 N. Y. 188; *Lackland* v. *North Mo. Ry. Co.,* 31 Mo. 160.

The power which the municipal corporation holds and exercises in controlling and regulating the use of streets has been delegated to it by the state. It is a grant of governmental powers for local purposes, subject to the control of the supreme power in the state. The legislature may at any time resume the power delegated: *Pople* v. *Kerr,* 27 N. Y. 188; Dillon, Munic. Corp. (4 ed.), Section 666; *Willamette Iron Works* v. *Oregon Ry. & Nav. Co.,* 26 Or. 224-228 (29 L. R. A. 88, 46 Am. St. Rep. 620, 37 Pac. 1016).

## ON REHEARING.

A municipal corporation is not liable for consequential damages necessarily caused in grading a street unless made liable by a statute, constitution or charter: Elliott, Roads & Streets, 336; 2 Dillon, Munic. Corp. (4 ed.), § 989; Lewis, Em. Dom. §§ 96 and 97; Mills, Em. Dom., §§ 195 and 196; 1 Harris, Dam. by Corp., §§ 126-130; 10 Am. & Eng. Enc. Law (2 ed.), 1124.

The argument of counsel, or much of it, seems to proceed upon the theory that the building of this bridge in the street is not a street use, but very much the same as though the street had been walled up or vacated so that it could no longer be used as a street. Our contention is that the approach to this bridge is as much a part of Madison Street as any other part of the street, and that plaintiff can no more complain of the approach being constructed on its present level than he could of any other part of the street being brought up to the duly established grade. This court in the opinion took this position and made reference to some authorities in support thereof. We are of opinion that the view so expressed is the correct one, and we would respectfully call attention to the following additional authorities so holding: 4 Am. & Eng. Enc. Law (2 ed.), 920; *Willis* v. *City of Winona,* 59 Minn. 27 (26 L. R. A. 142, 60 N. W. 814); Lewis, Em. Dom., § 109; Randolph, Em. Dom., § 399; *Skinner* v. *Hartford Bridge Co.,* 29 Conn. 523; *Colclough* v. *Milwaukee,* 92 Wis. 182 (65 N. W. 1039); *Walish* v. *Milwaukee,* 95 Wis. 16 (69 N. W. 818); *Willets Mfg. Co.* v. *Mercer Co. Freeholders,* 62 N. J. Law, 95 (40 Atl. 782).

MR. CHIEF JUSTICE WOLVERTON, after making the fore-
going statement of the facts, delivered the opinion.

1. Primarily, the state has paramount control over all the
highways within its borders, including public streets and
highways within the confines of municipalities. Whatever
authority a municipality may enjoy or possess, pertaining to
its streets and highways, must be derived from the legisla-
tive assembly through its franchise or charter; and such a
corporation acts, if at all, through a delegated power emanat-
ing from the initial source: 2 Dillon, Munic. Corp. (4 ed.),
§§ 680, 683; *Winters* v. *George*, 21 Or. 251, 259 (27 Pac.
1041) ; *Simon* v. *Northup*, 27 Or. 487, 501 (40 Pac. 560, 30
L. R. A. 171). Nor does the mere fact that the state has
delegated certain powers to the municipality inhibit it from
again resuming or exercising such powers. Hence it is
said : "The legislature of the state represents the public at
large, and has, in the absence of special constitutional re-
straint, and subject (according to the weight of more recent
judicial opinion) to the property rights and easements of the
abutting owner, full and paramount authority over all pub-
lic ways and public places" : 2 Dillon, Munic. Corp. (4 ed.),
§ 656. The logical and cogent result of these principles is
that the state, as well as the cities and towns to which it
has previously delegated the requisite authority, may fix
and establish the grade of the streets and public highways
within the corporate limits of such municipalities.

2. Whatever right the municipality may acquire in and
about its public streets—whether through dedication or by
condemnatory proceedings, or whatever may be the prop-
erty interests which remain or are left vested in the owner
of property abutting thereon, it has come to be settled, if
ever it was seriously controverted, that they cannot be bur-
dened with any additional servitude, other than that which
properly and legitimately attaches to them as public streets

and highways, without just compensation being made to the abutting lot owner: *Willamette Iron Works* v. *Oregon Ry. & Nav. Co.,* 24 Or. 224 (46 Am. St. Rep. 620, 29 L. R. A. 88, 37 Pac. 1016); *Huddleston* v. *City of Eugene,* 34 Or. 343 (43 L. R. A. 444, 1 Munic. Corp. Cas. 3340, 55 Pac. 868); *Barney* v. *Keokuk,* 94 U. S. 324, 340.

3.   The authorities are uniform to the purpose, however, that a municipality does not entail any liability for consequential damages resulting from the fixing or establishment of a street grade, unless specially required to respond by some constitutional, statutory, or charter provision: 2 Dillon, Munic. Corp. (4 ed.), § 686; *Willamette Iron Works* v. *Oregon Ry. & Nav. Co.,* 26 Or. 224 (29 L. R. A. 88, 37 Pac. 1016, 46 Am. St. Rep. 620); *Kelly* v. *Mayor of Baltimore,* 65 Md. 171 (3 Atl. 594).

4.   The authorized establishment of a street grade, although the change may result in consequential damages to the abutting property, is not a "taking," within the meaning of the clause of our constitution (Const. Or. Art. I, § 18), providing that "private property shall not be taken for public use."   The doctrine is well illustrated by the case of *Northern Transportation Co.* v. *Chicago,* 99 U. S. 635, where the legal distinction is specifically drawn between the term "taken," as used in the Constitution of the United States and the earlier state constitutions, and the phrase "taken or damaged," in the later ones.   It is there said: "Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking, within the meaning of the constitutional provision."   After the work complained of in that case had been substantially completed, the people of Illinois adopted another constitution, whereby it was ordained that private property should not be taken or damaged for public use without compensation; and, as thus adopted, it was held to

be an enlargement of the common provision for the protection of private property. In a later case *(Chicago* v. *Taylor,* 125 U. S. 161, 166, 8 Sup. Ct. 820), which directly involved its construction, it was held that it "required compensation in all cases where it appeared that there had been some physical disturbance of a right, ·either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." It is apparent that the interpolation of the words "or damaged" constitutes an innovation upon the usual provision, and explains the divergent views of the courts on the subject, and this is a cogent re-enforcement of the doctrine as quite uniformly maintained and held to under the United States Constitution, and those state constitutions containing a like or similar provision in respect of the "taking" of private property for public use. Judge Cooley states the generally accepted rule as follows: "Any proper exercise of the powers of government which does not directly encroach upon the property of an individual, or disturb him in its possession or enjoyment, will not entitle him to compensation or give him a right of action": Cooley, Const. Lim. (6 ed.), 666. The rule was directly applied by him, while upon the bench, in the case of *City of Pontiac* v. *Carter,* 32 Mich. 164, which was an action to recover damages for raising the grade of a public way, wherein he asserts that the weight of authority against the action is overwhelming, and sustains the assertion by a citation and review of a great number of cases. In further support of the rule, see *Stewart* v. *City of Clinton,* 79 Mo. 603; *Kehrer* v. *Richmond City,* 81 Va. 745; *Skinner* v. *Hartford Bridge Co.,* 29 Conn. 523; *Smith* v. *Corporation of Washington,* 61 U. S. (20 How.) 135; *In re Ridge St.,* 29 Pa. St. 391; *Murphy* v. *City of Chicago,* 29 Ill. 279 (81 Am. Dec. 307); *Roberts* v. *City of*

*Chicago,* 26 Ill. 249. A bridge connecting public highways, and erected for the general use and accommodation of the public, whether built and maintained at public expense, or by a private corporation authorized to charge and collect tolls from persons using the same, is itself a public highway, and constitutes part of the highways with which it is connected: *Pittsburg & W. E. Pass. Ry.* v. *Point Bridge Co.,* 165 Pa. St. 37 (30 Atl. 511, 26 L. R. A. 323).

5. In this connection it may be stated, as a general proposition, that, when a franchise or license to take tolls has expired, thereafter the right to the free use of such bridge as a public highway becomes vested in the people: *State ex rel.* v. *Lawrence Bridge Co., 22* Kan. 438.

6. We come now to an application of these principles to the facts which characterize this case. The legislature, in granting authority to construct the Madison Street Bridge, specially prescribed that its western approach should conform to the grade of Front Street, and it was so constructed, in observance with the legislative will. The width of the bridge was not designated in the act, but the grant carried with it the authority to erect such a structure as would reasonably accommodate public travel across the river at that point; and no question is made that the structure is unnecessarily cumbersome, or occupies more space than is requisite to meet the demand. As constructed, it practically occupies Madison Street, from First Street to the river, and constitutes an elevated roadway above the original surface of the street; and the broad contention is that the bridge constitutes an additional servitude upon the street, which plaintiff is entitled to have abated, or the structure so modified from its present condition as to give plaintiff access to his water-front buildings. We are of the opinion that the grant of authority to the bridge company to erect a bridge connecting the public highways theretofore terminating at the river banks, particularly specifying that the structure should con-

form at its western approach to the grade of Front Street, was, under the conditions prevailing, an establishment of the grade of that part of Madison Street to be occupied by said approach. It has resulted in an entire diversion of public travel from the original surface of Madison Street to the highway constituted by the bridge structure.

7. In *Wilkin* v. *City of St. Paul,* 33 Minn. 181 (22 N. W. 249), the defendant entered into a contract with certain railroad companies which were maintaining tracks and operating railroads upon Third Street in said city, whereby the companies agreed to construct upon the southerly portion of the street, over the tracks, and 20 feet above the established grade, a roadway 24 feet wide, with projecting sidewalks increasing its width to 36 feet, leaving uncovered and unoccupied 30 feet of the street. It was further agreed that the companies should construct approaches leading up to the roadway of the bridge, and should close and keep closed for travel that part of the street lying along the bridge and not occupied thereby, so as to deflect such travel to the bridge. An injunction was granted, upon the suit of the owner of lots abutting upon that portion of the street to be occupied by the bridge structure, restraining the companies from carrying the contract into effect, upon the ground that it would result in a change of the grade of that part of the street occupied by the bridge; and upon appeal to the supreme court the injunction was sustained. It was held that the contemplated work was intended to, and would, raise the established grade 20 feet; that, in effect, it would make the grade of the bridge, and necessarily of the approaches to it, the traveled street grade between the two ends of the work; and such grade not having been established, and compensation paid the abutter, as required by the city charter, the work was consequently restrained. The central idea upon which the case turned was that the purpose of the authorities was to bring about an actual change of grade, and that such

would be the effect, in practical operation, if the contract was carried out, and, such being its effect, the change could not be legally accomplished in that manner.

In another case (*Selden* v. *City of Jacksonville,* 28 Fla. 558, 14 L. R. A. 370, 10 South. 457, 29 Am. St. Rep. 278), a suit was instituted to enjoin the construction of a viaduct over and above numerous railroad crossings upon a public street by four railway companies under an agreement with the county and city, and to make the surface of the viaduct, instead of the original surface of the occupied street, the grade for public use and travel. It was held that the construction of the viaduct would effectuate a change of grade, and the suit having proceeded upon the theory that the municipal government of Jacksonville was erecting the structure, not as a joint party with the other parties to the agreement, but in the due exercise of its charter powers to change the grade of streets, though under agreement with the several parties named as co-defendants, by which they were to contribute to the expenses, it was concluded that the viaduct would not become or constitute an additional servitude upon the street, for which compensation should be recovered. So, in *Willets Mfg. Co.* v. *Board of Chosen Freeholders of Mercer Co.,* 62 N. J. Law, 95 (40 Atl. 782), it was held that, a bridge having been constructed for the purpose of joining together the two parts of the highway bisected by a waterway, the approaches thereto became a part of the highway, and that they constituted no additional burden thereupon. In that case the City of Trenton had, by proper proceedings taken for the purpose, acquired the right to use the *locus in quo* for the purpose of the public highway. These cases, while not to the exact purpose, serve to indicate very clearly what acts would be considered or would constitute an actual change of grade; so that, if the legislative assembly has employed language in connection with the subject-matter calculated to induce the doing of such acts, we must conclude that

it intended to establish the grade, and to require the change, in pursuance of the exercise of the franchise granted. The language of the act is that said approach "shall conform to the grade of Front Street." The bridge itself was to become a highway, and the approaches constitute a part of it. The legislative purpose was to divert the public travel upon the bridge—the newly-constituted highway—which was to occupy, so far as the western approach is concerned, that portion of Madison Street extending from Front Street to the river. So the conclusion is inevitable that the legislative will was also to establish the grade in conformity with Front Street when it required the structure to conform to the grade of that street, and such is the legitimate effect of the act.

It is stoutly contended that the case of *Willamette Iron Works* v. *Oregon Ry. & Nav. Co.*, 26 Or. 224 (46 Am. St. Rep. 620, 29 L. R. A. 88, 37 Pac. 1016), ought to be, and is, controlling, to the purpose that the Madison Street approach constitutes an additional servitude. But there is a radical distinction between the two cases. In that case the approach was constructed without pretense of a grant of authority to change the grade of the street; nor did it, or the bridge to which it was joined, form any part of, or an extension of, any public highway. Not so with the case at bar. The bridge and the approaches, as we have seen, form and constitute a part of the public highway, meeting and joining public streets or highways, extending to the river at each end thereof, giving continuous travel from and upon said streets upon and across the bridge; and the approach complained of, being constructed upon the authorized grade of Madison Street, constitutes the established grade thereof, supplanting the Madison Street surface, as used and occupied prior to its construction. It is true that, in the construction of the bridge by the Columbia Street Bridge Company, it left the roadway open through the approach on Mad-

38 OR.— 7.

ison Street leading to plaintiff's water-front buildings; but it
is apparent from what we have said that it was not required
to do so, being authorized, in a practical sense, to raise the
surface grade of the street by means of the approach.    The
leaving of the roadway was but a matter of accommodation,
to meet the convenience of the property interests on the river
bank, subject to be closed at the behest of the bridge com-
pany.   The Bridge Committee succeeded to all the powers
and authority granted to the bridge company under the fran-
chise, and, among others, the right and authority to close up
the roadway leading to the water front, and thus make the
bridge approach a solid structure throughout its entire
width. .  The fact that permission was asked of the City of
Portland, and granted, upon the condition that the commis-
sion restore the roadway if not satisfactory to property own-
ers, does not alter the case.    There was no attempt by the
city to alter the grade of the street; nor could it, if it had so
desired, accomplish such a purpose in that manner. The only
purpose was to give its consent in so far as it had any control
in the premises, to the Bridge Committee to act; the com-
mittee being, in a substantial sense, the agent of the city.
Subsequently, however, the city became the owner of the
bridge and franchise, and, the county having assumed the
operation thereof, insists that the roadway shall be kept
closed; so that the bridge company having been granted the
authority in the first instance to raise the surface grade of
the street by means of the solid approach to the bridge, and
the present authorities having succeeded to the franchise, it
follows that they have the right to so maintain it.   This view
of the case is strengthened by reason of the fact that the
bridge company has surrendered its franchise and right to
take tolls, so that, in practical operation, its free use has
become vested in the public; thus disendowing it of the only
remaining characteristic of a private concern, and putting it

upon the broad basis of a public highway, to all intents and purposes.

We have not attempted to distinguish this case as one affecting riparian rights, as the rules and principles we have applied are alike applicable, whether the change of grade is of a street extending to the water's edge or otherwise, and the result will be the same in either case. These considerations affirm the decree of the court below, and it is so ordered.

AFFIRMED.

Decided 17 September, 1900.

ON REHEARING.

For appellant there was an additional brief by *Mr. William D. Fenton.*

For respondents there was an additional brief by *Mr. Joel M. Long,* City Attorney.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

8. A careful re-examination of the vital questions attending this controversy has brought us to the same conclusion expressed in the former opinion. The pivotal issue is whether the bridge, with its approach upon Madison Street, constitutes an additional servitude, or has perverted the street to other than legitimate street purposes. If such is its effect, the plaintiff presents a substantial basis for a decree in accordance with the prayer of his complaint; otherwise not. There is but little, if any, conflict in the law, which is aptly and succinctly stated, with its proper limitations and distinctions, in *Willis* v. *Winona City,* 59 Minn. 27 (60 N. W. 814, 26 L. R. A. 142). In that case the city, under authority of the state and national legislatures, constructed a bridge across the Mississippi River, the approach of which extended a considerable distance along the center

of one of the streets of the city, and past the plaintiff's property, and the question arose whether it constituted an additional servitude, in determining which Mr. Justice MITCHELL says: "The doctrine of the courts everywhere, both in England and in this country (unless Ohio and Kentucky are exceptions), is that, so long as there is no application of the street to purposes other than those of a highway, any establishment or change of grade made lawfully, and not negligently performed, does not impose an additional servitude upon the street, and hence is not within the constitutional inhibition against taking private property without compensation, and is not the basis for an action for damages, unless there be an express statute to that effect. That this is the rule, and that the facts of this case fall within it, is too well established by the decisions of this court to require the citation of authorities from other jurisdictions: *Lee* v. *City of Minneapolis,* 22 Minn. 13; *Alden* v. *City of Minneapolis,* 24 Minn. 254; *Henderson* v. *City of Minneapolis,* 32 Minn. 319 (20 N. W. 322) ; *Yanish* v. *City of St. Paul,* 50 Minn. 518 (52 N. W. 925). See, also, *Northern Transportation Co.* v. *City of Chicago,* 99 U. S. 635; *Selden* v. *City of Jacksonville,* 28 Fla. 558 (10 South. 457, 14 L. R. A. 370, 29 Am. St. Rep. 278). The New York elevated railway cases cited by plaintiff are not authority in his favor, for they recognize and affirm the very doctrine that we have laid down in *Story* v. *New York Elev. Ry. Co.,* 90 N. Y. 122 (43 Am. Rep. 146), but hold that the construction and maintenance on the street of an elevated railroad operated by steam, and which was not open to the public for the purpose of travel and traffic, was a perversion of the street from street uses, and imposed upon it an additional servitude which entitled abutting owners to damages. Neither does *Adams* v. *Chicago B. & N. R. R. Co.,* 39 Minn. 286 (12 Am. St. Rep. 644, 39 N. W. 629, 1 L. R. A. 493), aid the plaintiff, for that case proceeds upon the proposition

that the construction and maintenance of an ordinary commercial railway upon a street is the imposition of an additional servitude.  Plaintiff also cites numerous cases as to what constitutes a 'taking' of private property. The law of those cases is unquestioned.  There is no doubt that the acts of the city would amount to a taking of plaintiff's property, so as to entitle him to compensation, provided the use made of the street by the city imposed an additional servitude upon it; but that is the very question in the case.  Our conclusion is that the construction and maintenance of this bridge approach did not impose an additional servitude upon the street, but was a proper street use, and hence constitutes no basis for an action in favor of plaintiff for damages."

This case affords a complete answer to the counsel's contention that there is a "taking" in the present instance, within the purview of the state and national constitutions, and, as the reasoning of the learned justice is so apt for our present purposes, we have taken the liberty to quote at much length from the opinion.  The doctrine of the New York elevated railway cases and of *Adams* v. *Chicago B. & N. R. R. Co.,* 39 Minn. 286 (1 L. R. A. 493, 39 N. W. 629, 12 Am. St. Rep. 644), is not questioned, but it is not applicable to this controversy.  In those cases there was an additional servitude created—in the former, by the construction of the elevated railway; and, in the latter, by an ordinary commercial railroad upon the streets.  Other New York cases present apt illustrations of the distinction which obtains between the legal effect of a structure which constitutes an additional servitude and one which is effective merely in producing a change in the street grade.  They hold that the construction of an ordinary railroad upon a street is an additional burden or servitude, for which compensation may be recovered, yet that the change of a grade upon lateral streets, made necessary to effectuate a convenient crossing of the railroad, does not constitute a burden for which the abutter is entitled to

compensation: Rand, Em. Dom., § 399; *Uline* v. *New York etc., R. R. Co.,* 101 N. Y. 98 (4 N. E. 536, 53 Am. St. Rep. 123) ; *Conklin* v. *New York L. & W. Ry. Co.,* 102 N. Y. 107 (6 N. E. 663) ; *Rauenstein* v. *New York L. & W. Ry. Co.,* 136 N. Y. 528 (32 N. E. 1047, 18 L. R. A. 768). To the same purpose, see, also, *Robinson* v. *Great Northern Ry. Co.,* 48 Minn. 445 (51 N. W. 384) ; and *Wead* v. *St. Johnsbury & L. C. R. R. Co.,* 64 Vt. 52 (24 Atl. 361).

All these approve the doctrine that a mere change in a street grade, lawfully accomplished, without negligence or carelessness on the part of the proper authorities, does not entitle the abutters to compensation for any inconvenience that may be entailed thereby. It was said in *Conklin* v. *New York L. & W. R. R. Co.,* 102 N. Y. 107 (6 N. E. 663), Mr. Justice FINCH speaking for the court: "The plaintiff's fee in it to its center line was not subjected to a new or different use involving a new or added compensation, but it remained unchanged as the public highway originally laid out in everything but its grade. If it became such by dedication, compensation for the easement was expressly waived. If taken by right of eminent domain, the compensation paid covered all the damages sustained, among which were necessarily embraced such as might flow from a change of grade required for the public use and convenience. That might be altered by any lawful authority, and whatever of injury or inconvenience should result to the abutting owner was either waived by the dedication, or paid for by the original compensation, so that a change of grade upon a highway invades no private right. The contrary doctrine once held *(Fletcher* v. *Auburn & S. R. R. Co.,* 25 Wend. 462), has been effectually overruled *(Radcliff's Ex'rs.* v. *Mayor of Brooklyn,* 4 N. Y. 195, 53 Am. Dec. 357; *Bellinger* v. *New York C. R. R. Co.,* 23 N. Y. 42; *Selden* v. *Delaware Canal Co.,* 29 N. Y. 634). The appellant here relies upon *Story* v. *New York Elev. Ry. Co.,* 90 N. Y. 122 (43 Am. Rep. 146). That

case was not intended to thus unsettle the law, for it expressly excluded from its operation injuries resulting from changes of grade." Nor do the cases of *Pumpelly* v. *Green Bay Canal Co.*, 80 U. S. (13 Wall.), 166; *Eaton* v. *Boston C. & M. R. R.*, 51 N. H. 504 (12 Am. Rep. 147), and others holding to the same doctrine, help the plaintiff, for in those cases there was a physical invasion of the real estate of the private owner by a permanent flooding, which was regarded as a taking within the meaning of the constitutional inhibition.    These cases are characterized by Mr. Chief Justice FULLER in *Gibson* v. *United States*, 166 U. S. 269 (17 Sup. Ct. 578), as containing the "extremest qualification" upon the doctrine which is everywhere established except, perhaps. in Ohio and Kentucky.

*Willis* v. *Winona City*, 59 Minn. 27 (26 L. R. A. 142, 60 N. W. 814), is in point and authoritative to the purpose that the bridge approach constructed upon Madison Street does not constitute an additional servitude thereon.    It is also authority for the other proposition held to in the first opinion, namely, that the legislative authority given the bridge company to construct the bridge and its approach, specifying that such approach should be put upon the established grade of Front Street, was in itself an establishment of the grade upon that part of the street occupied by the approach.    Mr. Justice MITCHELL says: "The bridge is just as much a public highway as is Main Street, with which it connects; and, whether we consider the approach as a part of the former or of the latter, it is merely a part of the highway.    The city having, as it was authorized to do, established a new highway across the Mississippi River, it was necessary to connect it, for the purpose of travel, with Main and the other streets of the city.    This it has done, in the only way it could have been done, by what, in effect, amounts merely to raising the grade of the center of Main Street in front of plaintiff's lot.    It can make no difference in principle whether this was

done by filling up the street solidly, or, as in this case, by supporting the way on stone or iron columns. Neither is it important that the city raised the grade of only a part of the street, leaving the remainder at a lower grade." So, too, it was held in *Colclough* v. *City of Milwaukee,* 92 Wis. 182 (66 N. W. 110), that the construction, under legislative authority, of an elevated approach to a viaduct which occupied the whole street, constituted but a mere change of the grade thereof for the corresponding distance, but not an additional servitude for which the abutter was entitled to compensation. Mr. Justice PINNEY says: "It is impossible, we think, to maintain that the construction of this approach to the viaduct is not really a mere change of the grade of the street for the corresponding distance, and of which it takes the place. It is in the nature of a bridge which is an extension of a highway or street, and the street beneath is practically discontinued."

9. We feel assured that our former opinion is sound upon the proposition; but, if we are mistaken in this, the act of 1898 (Sess. Laws 1898, p, 185, § 231), declaring the bridge approach to be the established grade of Madison Street so far as occupied thereby is curative of the irregularities complained of, although such act may have been adopted after the commencement, or even decision, of the present suit in the court below: *Pennsylvania* v. *Wheeling Bridge Co.,* 59 U. S. (18 How.), 421, and *The Clinton Bridge,* 77 U. S. (10 Wall.), 454. For the reasons here stated, the former opinion will be adhered to.

AFFIRMED ON REHEARING.